UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,               :          Case No. 2:20-cr-49

      v.                           Judge Sarah D. Morrison
                               :

DENZELL ATLAS,

      Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Denzell Atlas's Motion to Suppress. (ECF No. 40.) The Government filed its Response in opposition to the motion. (ECF No. 42.) Mr. Atlas filed a Reply. (ECF No. 46.) Defendant Glenn Williams subsequently filed a Motion to Adopt and Join Mr. Atlas's Motion to Suppress. (ECF No. 45.) Mr. Williams's Motion to Adopt and Join is **GRANTED**. Defendants' joint Motion to Suppress is now ripe for this Court's review.

## I.    FACTUAL BACKGROUND

On March 3, 2020, Deputy Ryan Zide, a deputy sheriff for the Washington County Sheriff's Office, was monitoring traffic on I-77 in Washington County. (Mot. to Suppress Ex. B ("Ex. B") 5:11–21, 6:15–17, ECF No. 40-2.) Around 11:00am, Deputy Zide began to follow a Chevy Camaro, and, after seeing the car "make two marked lanes violations," he pulled the car over. (*Id.* 6:21–7:7; *id.* Ex. A ("Ex. A"), at 1.) Specifically, Deputy Zide believed that the car had committed two lane violations by driving twice on the marked lane line without crossing over the line. (Ex. B 31:4–7, 32:14–21.)

After pulling the car over, Deputy Zide learned that Defendant Denzell Atlas was the driver and that Defendant Glenn Williams was in the passenger seat. (*Id.* 8:18–19.) During this traffic stop, Deputy Zide's canine sniffed around the car and alerted. (*Id.* 11:12–18.) Upon searching the car, Deputy Zide discovered "a brick of suspected drugs." (*Id.* 13:7–14.) The Government alleges that this brick was later confirmed to be cocaine. (Gov. Resp. to Mot. to Suppress, ECF No. 42, at 2.)

On March 12, 2020, a grand jury returned a two-count indictment against Mr. Atlas and Mr. Williams charging them each with a conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1.)

## II.    ANALYSIS

To conduct a traffic stop for a completed traffic violation, a law enforcement officer must have probable cause that a traffic violation has occurred. *United States v. Collazo*, 818 F.3d 247, 253–54 (6th Cir. 2016). The question is whether Deputy Zide had probable cause to believe that Mr. Atlas had violated Ohio's marked lane statute when he drove on the marked lane line.

### A.    Purported marked lane violation

Ohio's marked lane statute requires individuals traveling on roads with marked lanes to drive, "as nearly as practicable, entirely within a single lane or line of traffic . . . ." Ohio Rev. Code Ann. § 4511.33(A)(1) (West 2020). The statute clearly prohibits driving over a marked lane line (i.e., outside of the "single lane" identified in the statute). The question of whether driving *on* a marked lane line violates this statute has not been conclusively answered. In fact, the Ohio Supreme Court has recently taken up the question. *State v. Turner*, 137 N.E.3d 1225 (Ohio 2020). But the consensus among the Ohio intermediate appellate courts is that driving on

2

the line is not a violation of the law. *See, e.g.*, *State v. Kneier*, No. 2015-P-0006, 2015 WL 5005739, at *3 (Ohio Ct. App. Aug. 24, 2015) (Eleventh District); *State v. Baker*, No. WD-13-074, 2014 WL 2700938, at *3 (Ohio Ct. App. June 13, 2014) (Sixth District); *State v. Marcum*, 993 N.E.2d 1289, 1292 (Ohio Ct. App. 2013) (Fifth District). *But see State v. Turner*, 145 N.E.3d 985, 991 (Ohio Ct. App. 2019) (Twelfth District). The Sixth Circuit has concluded the same. *United States v. Warfield*, 727 F. App'x 182, 186 (6th Cir. 2018).

The Government argues that all of these courts, including the Sixth Circuit, are wrong. In doing so, the Government relies primarily on the dictionary definitions of "entirely" and "within." (ECF No. 42, at 4.) But in answering the question of whether driving onto the lane line is a violation of § 4511.33, the phrase requiring definition is "single lane," not "entirely within." The issue is whether the marked lane lines are part of the "single lane" or, to put it differently, whether they are the outer boundaries of the "single lane" itself or whether they demarcate the points beyond which the lane exists. If the lane lines are part of the lane, a car remains within the lane by driving on the lines, just as a car remains within the lane by driving between the lines. If the lane lines instead mark the point at which the "single lane" ends, then a car violates the statute by driving on the line because it has driven beyond the bounds of the "single lane."

Next the Government argues that if a driver's wheels are on a marked lane line, then some portion of the car (such as its side mirrors, the fender, or the bumper) must have extended beyond the line. (ECF No. 42, at 4.) This argument is problematic for two reasons. First, it is speculation. There is no evidence in the record as to the size of the Camaro's mirrors, fender, or bumper or the width of the marked lane line at issue. There is no way for the Court to determine whether the Government's assumption is correct. Second, concluding that it is a violation of the statute for a side mirror to cross a lane line when the rest of the car has not would create other

3

issues of statutory interpretation. In particular, it would mean that a car with wheels *entirely within* the lane lines could still violate the statute if its mirror were to cross the lane line. Such a conclusion is difficult to square with the text of § 4511.33.

Third, the Government points to the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). (ECF No. 42, at 4.) The OMUTCD says that "[a] solid line discourages or prohibits *crossing*" the line, not touching the line. Ohio Manual of Uniform Traffic Control Devices § 3A.06 (2012) (emphasis added). That the OMUTCD specifically references crossing the line but not touching the line supports Mr. Atlas's argument, not the Government's.

Finally, the Government insists that *Warfield* should not be followed because it did not conduct any analysis of the statute at issue. (ECF No. 42, at 5.) This is not correct. While the analysis in *Warfield* is brief, the court looked to § 4511.33 and explicitly held that "[m]erely touching a lane line is not a violation of Ohio's marked lane statute." 727 F. App'x at 186.

The Court is not convinced that Mr. Atlas violated Ohio's marked lane statute by driving on the marked lane line without crossing it. However, the Court need not conclude that it was a violation to resolve this motion.

### B.     Good faith

What is more relevant than whether Mr. Atlas violated the statute is whether Deputy Zide reasonably believed that he did. This is because "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (some internal quotation marks omitted). "[T]he Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* at 60–61 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). Given these baseline Fourth Amendment principles, the Supreme Court has determined that a traffic

4

stop based on reasonable suspicion is not undermined by a subsequent determination that the stop was premised on a legal mistake. *See id.* at 61.

Defendants argue that *Heien* is inapplicable because *Heien* only held that a stop based on *reasonable suspicion* can be premised on a reasonable mistake of law. (ECF No. 49 (citing *Heien*, 574 U.S. at 61).) Under Sixth Circuit law, however, a traffic stop for a completed traffic violation, as here, must be based on probable cause. This is a distinction without a difference for three reasons.

First, in concluding that a reasonable mistake of law can support a stop based on reasonable suspicion, the Court in *Heien* heavily relied on Supreme Court precedent that indicates that reasonable mistakes of law can support probable cause. 574 U.S. at 62–63. That is, while *Heien* had no reason to hold that a stop based on probable cause can be based on a reasonable mistake of law, it identified a string of precedent from which that conclusion follows. *See id.* at 62 ("This holding—that reasonable mistakes of law . . . would justify certificates of probable cause—was reiterated in a number of 19th-century decisions."); *J Mack LLC v. Leonard*, No. 2:13-CV-808, 2015 WL 519412, at *9 (S.D. Ohio Feb. 9, 2015).

Second, the Court observed that a probable cause arrest based on an unconstitutional ordinance will not generally require the exclusion of any contraband resulting from that arrest. *Heien*, 574 U.S. at 63–64 (analyzing *Michigan v. DeFillippo*, 443 U.S. 31 (1979)). That is because the probable cause for an arrest is not undermined by the later invalidation of a statute. *Id.* There is no reason to believe that a probable cause stop based on an incorrect interpretation of the law should be treated any differently. If the probable cause supporting an arrest is not undermined by a reasonable mistake of law, the probable cause supporting a traffic stop should not be either.

Third, the reasonable suspicion and probable cause standards differ only in terms of the quantum of proof required to meet them. *See Ornelas v. United States*, 517 U.S. 690, 695–96 (1996). But the analysis here is not dependent on the quantity of evidence underlying Deputy Zide's traffic stop. Assuming driving on the line is illegal, Deputy Zide's observations were clearly sufficient evidence to support a finding of probable cause. Rather, what is at issue here is the validity of relying on an officer's mistake of law to justify a Fourth Amendment seizure. The quantum of proof required for the stop (i.e., whether there was enough evidence to support a finding of reasonable suspicion or probable cause) is irrelevant to that determination.

The question, then, is whether it was objectively reasonable for Deputy Zide to believe that Mr. Atlas violated the Ohio marked lane statute by driving onto the line without crossing it. *See Heien*, 574 U.S. at 66. The marked lane statute requires a driver to remain "within a single lane." While that phrase is not abundantly clear, it is reasonable to interpret the "single lane" to encompass only the space within the painted lines. *See Kneier*, 2015 WL 5005739, at *3; *Baker*, 2014 WL 2700938, at *3; *Marcum*, 993 N.E.2d at 1292. Such an interpretation would mean that remaining "entirely within" the lane involves not touching the lines at all.

Mr. Atlas argues that § 4511.33 is not ambiguous, primarily because the Sixth Circuit and six of Ohio's twelve intermediate appellate courts have all construed the statute in the same manner. This logic is flawed for two reasons. First, the intermediate appellate court in the county in which Mr. Atlas was stopped, Washington County, is not one of these six courts to have decided the issue. In other words, this is a novel issue in Washington County. Second, there is a split among the Ohio intermediate appellate courts on this issue, a split that existed at the time that Deputy Zide conducted the traffic stop. The Ohio Supreme Court has now certified an

appeal to resolve the issue. All of this indicates that Deputy Zide's interpretation of the marked lane statute was a reasonable one.

While this Court is not convinced that Deputy Zide's interpretation of the statute was correct, for purposes of the joint Motion to Suppress, what matters is whether his interpretation was reasonable. It was.

## III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the joint Motion to Suppress. (ECF Nos. 40, 45.)

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**